UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
ROBERT B.,                                                         :
                                                                   :   **MEMORANDUM &**
                     Plaintiff,                                    :   **ORDER GRANTING**
                                                                   :   **MOTION TO AFFIRM**
     -against-                                                  :   **DECISION OF THE**
                                                                   :   **COMMISSIONER OF**
MARTIN O'MALLEY, Commissioner of                                   :   **SOCIAL SECURITY**
Social Security,[1]                                                :
                                                                   :   3:23-CV-01357 (VDO)
                     Defendant.                                    :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

       Plaintiff Robert B.[2] commenced this action to seek judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") ruling that he is not entitled to Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a motion setting forth the reasons why the Commissioner's decision should be reversed. (ECF No. 15.) The Commissioner filed a cross-motion to affirm the decision. (ECF No. 20.)

       For the reasons set forth below, Plaintiff's motion is **denied** and Defendant's motion is **granted**.

---

[1] On December 20, 2023, Martin O'Malley replaced Kilolo Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.

[2] Plaintiff is identified by his first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

I.  **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in Plaintiff's Statement of Material Facts (ECF No. 17), which the Court adopts and incorporates by reference.

On April 10, 2020, Plaintiff applied for SSI, alleging disability beginning on February 1, 2020. (Certified Administrative Record ("R."), at 277–300.[3]) Plaintiff's claim was denied on February 12, 2021. (R. at 139–44.) Plaintiff's claim was again denied upon reconsideration on October 13, 2021. (R. at 103–19.) On December 16, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 164-65.) Plaintiff, Plaintiff's representatives (Lori Lembeck and Percell Williams), and an impartial vocational expert (Diamond Warren) participated in a hearing before an ALJ (Judge Hilton R. Miller) on July 21, 2022. (R. at 38.)

On August 19, 2022, the ALJ found Plaintiff to be not disabled under section 1614(a)(3)(A) of the Social Security Act, and thus not entitled to SSI. (R. at 52.) Subsequently, the Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for appellate review. (R. at 1.)

Plaintiff filed the instant action on October 17, 2023. (ECF No. 1.) On January 18, 2024, Plaintiff moved to reverse the decision of the Commissioner. (ECF No. 15.) Defendant cross-moved on March 18, 2024. (ECF No. 20.) Plaintiff replied to Defendant's motion on April 1, 2024. (ECF No. 21.)

---

[3] "R." refers to the Certified Administrative Record filed at ECF Nos. 11, 11-1, and 11-2. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

## II.     STANDARD OF REVIEW

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled, thus qualifying a claimant to benefits, a claimant must be unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(a)). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)." *Schillo*, 31 F.4th at 70.

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). The Commissioner considers whether "the combined effect of all [] impairments . . . would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved for the SSA, the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III. DISCUSSION

Plaintiff raises three arguments in his motion: 1) the ALJ failed to properly evaluate the medical opinion evidence in determining the residual functional capacity ("RFC"); 2) the ALJ failed to properly evaluate Plaintiff's subjective statements; and 3) the Appeals Council improperly declined to reopen Plaintiff's case. The Court addresses each of these objections in turn.

#### A. The ALJ Properly Weighed the Medical Opinion Evidence

Plaintiff asserts that the medical opinion evidence does not support the assigned RFC with regard to Plaintiff's mental limitations and that the ALJ failed to "provide any meaningful analysis of how the opinions were evaluated under the factors of supportability and

4

consistency." (Pl. Mem., ECF No. 16, at 4, 16.) Defendant contends that substantial evidence supports the ALJ's RFC assessment. (Def. Mem., ECF No. 20-1, at 3.) The Court agrees with Defendant.

The RFC "is what the claimant can still do despite the limitations imposed by his impairment." *Greek v. Colvin*, 802 F.3d 370, 373 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§ 416.945(a)(1), (3). The RFC, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

With respect to Plaintiff's mental impairments, the ALJ determined that Plaintiff could "perform work involving simple, repetitive, routine tasks that can be explained, specifically at specific vocational preparations of 1 and 2 that involve making simple decisions and only occasional changes in routine" with no contact with the public and "only occasional contact with coworkers and supervisors." (R. at 43.) Substantial medical opinion evidence supports the RFC determination.

First, Dr. Bruni, a state agency psychological consultant, concluded that Plaintiff's mental impairments limit him to simple tasks and a work setting in which he would have limited contact with coworkers and the public, but that Plaintiff could "cope with basic changes and make routine decisions." (R. at 99.) The ALJ also remarked on the opinion from Dr. Butler, which opined that Plaintiff had a "mild" limitation on interactions with others. (R. at 114.) The ALJ noted that Dr. Butler had reviewed the longitudinal record and that his opinion was

persuasive, but not as persuasive as Dr. Bruni's opinion, which actually afforded greater limitations on Plaintiff's functioning consistent with the record as a whole. (R. at 48.)

Next, the ALJ discussed the opinion from psychologist Dr. Sprung, who performed a consultative evaluation of Plaintiff. (R. at 48.) Dr. Sprung observed that Plaintiff's thought processes were coherent, linear and goal directed with no evidence of hallucination and that his recent and remote memory skills were only mildly impaired. (R. at 1142.) He further concluded that Plaintiff had a "moderate to marked limitation in [the] ability to interact adequately with supervisors, coworkers, and the public, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well-being" due to "trauma, mood, and psychotic symptoms." (R. at 1143.) As a result, the ALJ found Dr. Sprung's assessment to be "partially persuasive" and supported by and consistent with the examination findings from treating providers. (R. at 48.)

The ALJ thereafter discussed Dr. Mendlinger's opinion, which opined that Plaintiff would have a moderate limitation in using reason and judgment to make work-related decisions but a marked limitation in interacting adequately with supervisors, coworkers, and the public. (R. at 49.) In concluding that the opinion was unpersuasive, the ALJ noted, "While the record does support finding moderate limitations in all areas of mental functioning, the extreme limitations Dr. Medlinger[, who performed a consultative psychiatric evaluation,] offered appear more consistent with the [plaintiff's] subjective symptom reports than with the [plaintiff's] generally stable mental status even during periods of symptom exacerbation." (R. at 49–50.)

As for Plaintiff's treatment providers, the Court finds that the ALJ properly applied the treating physician rule when evaluating the medical opinion evidence. Under the rule, ALJs

6

must give a treating physician's opinion about an impairment "'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic testing and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ were to find that the treating physician's opinion is not entitled to controlling weight, the ALJ must "explicitly consider the following, nonexclusive *Burgess* factors" before assigning persuasive weight: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (internal quotation marks and citation omitted). Failure to do so is a "procedural error;" but if "'a searching review of the record' assures [a court] 'that the substance of the treating physician rule was not traversed,'" the decision will be affirmed. *Id.* at 96 (quoting, in part, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Here, there is substantial evidence supporting the ALJ's finding that the opinions of Melissa Bracero, LMSW and Carline Charles, NP were inconsistent with the treatment/longitudinal record, and therefore not entitled to controlling weight under *Burgess*. (R. at 49-50.) In her functional capacity report, Ms. Bracero, Plaintiff's treating psychotherapist, concluded that Plaintiff had no more than mild limitations in social functioning and his ability to understand, remember, and carry out instructions, to respond appropriately to supervision and coworkers, to satisfy normal quality, production, and attendance standards at work, to respond to ordinary work pressures, and to perform simple and complex tasks on a sustained basis. (R. at 1535-37.) However, the ALJ found that these conclusions were not supported by the evidence in the record demonstrating Plaintiff's residual

paranoia and occasional symptom exacerbations during times of increased stress. (*See* R. at 1028–86; 1087–1139.) Nevertheless, the ALJ noted that "as one of the claimant's treating providers, the undersigned did take note of the objective findings Ms. Bracero included in support of her assessment and considered it in forming the residual functional capacity." (R. at 49.) Because the ALJ considered Ms. Bracero's status as a treating psychotherapist alongside the inconsistent treatment records, it is clear "the substance of the treating physician rule was not traversed" when he did not give her opinion controlling weight. *Halloran*, 362 F.3d at 33.

Similarly, Nurse Charles, Plaintiff's psychiatric provider, opined that Plaintiff had moderate to marked limitations in all areas of mental functioning and that Plaintiff's symptoms triggered him to socially isolate and sometimes made it difficult for him to leave the house so that he would be absent from work more than three times per month. (R. at 1543–44.) The ALJ found that, "[a]lthough NP Charles is one of the claimant's treating providers during the relevant period, she offered limited objective evidence to support her conclusions, as she primarily described the [plaintiff's] subjective symptom reports. On the other hand, records from her practice do not support such extreme limitations given the [plaintiff's] generally good response to treatment and relative stability even in periods of high stress and symptom exacerbations." (R. at 50.) Thus, as with Ms. Bracero, because the ALJ considered Nurse Charles' status as a treating provider along with the whole record, he properly followed the treating physician rule.[4]

---

[4] Plaintiff also argues, "The ALJ's lack of explanation and discussion regarding why the lay ALJ felt comfortable in rejecting the clinical findings and supporting explanation provided by the treating mental health specialist fails the requirement that an ALJ must consider all the support

Accordingly, the RFC determination is supported by substantial medical opinion evidence. *John C. W. v. Kijakazi*, No. 3:21-CV-01081 (SALM), 2022 WL 3025718, at *11 (D. Conn. Aug. 1, 2022).

### B. The ALJ Properly Considered Plaintiff's Subjective Statements

The Court next finds that the ALJ did not err at step two of the two-step framework for evaluating a plaintiff's subjective statements regarding his disability, when he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record.'" (R. at 44.)

As background, the ALJ must decide at step one "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged," which is not contested here. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). At step two, the ALJ makes a credibility determination. Specifically, "the ALJ must consider 'the extent to which [the plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). There are seven factors the ALJ "must consider": "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative

---

provided by a medical source for the opinions offered." (Pl. Mem. at 4–5.) The Second Circuit has explicitly "reject[ed]" the argument that an "ALJ commit[s] reversible error by basing [his] RFC determination on [his] own lay opinion rather than on record medical evidence." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order).

9

proceedings." *Id.* (quoting 20 C.F.R. § 404.1512(b)(3)) (brackets in original). But "if the ALJ thoroughly explain[s] his credibility determination and the record evidence permits [a court] to glean the rationale of the ALJ's decision," the ALJ need not "discuss all seven factors" and the decision will be affirmed. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order).

Here, the ALJ explained at step two that Plaintiff's subjective statements of disability "appear inconsistent with the objective evidence of record." (R. at 47.) The ALJ walked through several of these records in chronological order. (R. at 44–48.) For example, Plaintiff "reported very low motivation along with low frustration tolerance so that he left most household chores for his aunt to complete." (R. at 44.) However, in his function report, Plaintiff stated that he attends to personal care, manages his finances, shops for necessities, prepares simple meals, socializes with family, and goes out three to four times a week either by walking or using public transportation. (R. at 322–23.) Further, the ALJ noted, "Although the [plaintiff] described elaborate auditory hallucinations that he heard during solitary confinement, this is not reflected elsewhere in the record." (R. at 45.) As a result, the ALJ determined, "Though he reported some inconsistencies in activities of daily living to various examiners during the relevant period, the longitudinal record since the application date shows the [plaintiff] continued to live independently with his aunt without any episodes of decompensation that required inpatient treatment or hospitalization even during periods when the [plaintiff] was not compliant with treatment." (R. at 47.) *See also Johnson v. Berryhill*, No. 3:16-cv-01050 (SRU), 2017 WL 2381272, at *8 (D. Conn. June 1, 2017) (upholding an ALJ's adverse credibility determination when a plaintiff's testimony was inconsistent with other evidence related to his daily activities).

10

Plaintiff contends that the "ALJ's evaluation of [Plaintiff's] subjective statement[s] [are] not supported by substantial evidence." (Pl. Mem. at 14.) It is clear from his opinion that the ALJ's adverse credibility determination rests on the inconsistency between the Plaintiff's testimony and the other medical evidence. Indeed, "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). The Court will not upset this credibility determination. "It is the role of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki*, 534 F. App'x at 75 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ therefore did not err in his evaluation of Plaintiff's subjective statements of disability, either.

### C.   The Appeals Council Properly Declined to Reopen Plaintiff's Case

Plaintiff's last argument is that the Appeals Council disregarded the new evidence it received in the form of a report from examining psychologist Dr. Ryser in declining to review the ALJ's decision. (Pl. Mem. at 17.) Plaintiff's argument lack merit.

In its decision, the Appeals Council explained that Dr. Ryser's report "does not relate to the period at issue. Therefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before August 19, 2022. For the evidence that does relate to the period at issue, we find it does not show a reasonable probability that it would change the outcome of the decision." (R. at 2.) Accordingly, the Court concludes that the Appeals Council properly

11

considered Dr. Ryser's October 10, 2022 letter, but correctly determined that it did not provide a sufficient basis for modifying the ALJ's decision.

## IV. CONCLUSION

For these reasons, the Commissioner's motion to affirm the Commissioner's decision (ECF No. 20) is **GRANTED** and Plaintiff's motion to reverse the Commissioner's decision (ECF No. 15) is **DENIED**. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
June 7, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge